IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**HIGHLAND SUPPLY COMPANY,**
**an Illinois Corporation, and**
**PRIMA TEK II, L.L.C., an Illinois**
**Limited Liability Company,**

**Plaintiffs,**

**v.**

**KLERK'S FLEXIBLE PACKAGING,**
**B.V., a Netherlands Corporation, f/k/a**
**KLERK'S PLASTIC INDUSTRIE, B.V.,**

**Defendant.**                                                             **No. 05-CV-482-DRH**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

### I. Introduction

Before the Court is a motion for summary judgment submitted by Defendant Klerk's Flexible Packaging, B.V. ("Defendant"). (Doc. 43.) Highland Supply Company and Prima Tek II, L.L.C. (together, "Plaintiffs") respond in opposition. (Doc. 60.) Defendant also submitted a reply. (Doc. 61.) For the following reasons, the Court denies Defendant's motion in part and grants in part.

### II. Background

This case arises out of a business relationship between Plaintiffs, affiliated companies holding several patents related to plant covers, and Defendant, a manufacturer and distributor. Plaintiffs originally filed this case in the Circuit

Court of Madison County, Illinois. (Doc. 2.) Defendant removed the matter to this Court on July 8, 2005. (Doc. 1.)

On May 15, 1998, the parties entered into an agreement (the "1998 Agreement" or "Agreement") pursuant to which Defendant was to sell plant covers manufactured using Plaintiffs' patented technology. Plaintiffs now allege that Defendant breached Article X of the Agreement ("Article X") by conceiving, developing, and then "manufactur[ing] and/or sell[ing]" certain types of plant covers. (Doc. 2, Pls. Compl., ¶¶ 13-17.) Plaintiffs further assert that Defendant violated Article X by failing to inform them of these activities.

In pertinent part, Article X states

> 10.1 As part of [Defendant's] duties and without further compensation, [Defendant] may conceive of new developments and/or innovations and/or improvements and/or works of authorship . . . **in products covered by the LICENSED PATENT** . . . and all such developments and/or inventions and/or improvements and/or works of authorship . . . conceived of by [Defendant], either alone or with others, shall be the property of [Plaintiff Highland] or their designee. This paragraph 10.1 applies to such developments and/or inventions and/or improvements and/or works of authorship made and/or authored after termination of this Agreement if conception by [Defendant] occurred prior to termination . . . .
>
> 10.2 [Defendant] shall disclose promptly and in writing to [Plaintiff Highland's] President or the President's designee all developments and/or inventions and/or improvements and/or and [sic] works of authorship referred to this Article X.
>
> 10.3 When requested to do so, whether during [Defendant's] engagement hereunder or after termination thereof, [Defendant] shall . . . assign and convey to [Plaintiff Highland] or their designee the entire right, title and interest in the developments and/or inventions and/or

works of authorship and confidential property referred to in Article X.[1] (Doc. 20.)  Due to Defendant's alleged violations, Plaintiffs request an order (1) commanding Defendant to assign and convey its entire "right, title and interest in and to" plant covers falling under the Agreement; (2) permanently enjoining Defendant from further manufacturing or selling the plant covers; (3) requiring Defendant to provide an accounting of all sales of such plant covers; (4) imposing a constructive trust over all proceeds obtained by Defendant by wrongfully selling the plant covers; (5) granting costs; and (6) providing other relief.  (Doc. 2, Pls. Compl., ¶ 20.)

### III. Analysis

Defendant offers four points in support of its Motion: 1) that its "Tylar Sleeve" is not "covered by" Plaintiffs' Patent Number 5,581,938 (the "'938 Patent"), and therefore Defendant has not violated Article X; 2) that the "Romance Heart Sleeve" was not manufactured, developed, or sold during the operation of the Agreement, and therefore Defendant has not violated Article X; 3) that Plaintiffs claims are *res judicata* due to a judgment rendered in an earlier case;[2] and/or 4) that Plaintiffs are collaterally estopped from asserting critical claims due to that prior judgment. (Doc. 51, pp. 3, 18, 19, 26.)

---

[1] The "LICENSED PATENT" at issue is U.S. Patent No. 5,581,938, entitled "Decorative Sleeve for Covering a Flower Pot."  (Doc 2, Pls. Compl., ¶ 6.)  The three sections above are the lone sections of Article X cited in Plaintiffs' complaint. (Doc. 2, Pls. Compl., ¶¶ 9-12.)

[2] *Prima Tek II, L.L.C. v. Klerk's Plastic Industrie, B.V.*, **Case No. 00-583-GPM**.

Defendant fails to show that summary judgment as to Plaintiffs' "Tylar Sleeve" claims is appropriate. However, because no genuine issue of material fact exists regarding Plaintiffs' claims to the "Romance Heart Sleeve," partial summary judgment is granted as to these claims. The Court further finds that neither Plaintiffs' cause of action nor any other critical issues presented by this suit is precluded by prior litigation. Therefore, Plaintiffs' case may proceed, but shall be limited to the issue of whether Defendant is liable on the Tylar Sleeve claim.

### A.   Summary Judgment Standard

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(c)**; ***Oats v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)** (citing ***Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)**).  The movant bears the burden of establishing the absence of fact issues and entitlement to judgment. ***Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)** (citing ***Celotex*, 477 U.S. at 323**).  In reviewing a summary judgment motion, a court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. ***Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1124 (N.D. Ill. 1995)**.  The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant. ***Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)** (citing

***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)**).

### B. Defendant's Claims on the Merits

Defendant first asserts that summary judgment is appropriate because the evidence leaves no room for dispute that Article X has not been breached. According to Defendant, this is because the Tylar Sleeve does not "infringe" the '938 Patent, and because the Romance Heart Sleeve falls outside the coverage of the Agreement. (Doc. 51, pp. 3, 18.) As to Plaintiffs' claims concerning the Tylar Sleeve, the Court finds that there are genuine issues of material fact and, therefore, summary judgment is not appropriate at this stage. However, the Court finds that partial summary judgment is warranted as to the Romance Heart Sleeve claims.

#### 1. Genuine Issues of Material Fact Germane to Plaintiffs' Tylar Sleeve Claims Persist

##### i. What is the Meaning of the Phrase "Covered by the LICENSED PATENT"?

Pointing to paragraphs 6, 9, 13, and 19 of the Complaint (Doc. 2), Defendant alleges that Plaintiffs must prove that the Tylar Sleeve has infringed the '938 Patent in order to recover. (Doc. 51., pp. 3-4.) In support of this contention, Defendant first represents that Article X of the Agreement makes Defendant responsible for "products covered by the ['938 Patent]." (Doc. 51, p. 4). Defendant then points the Court to ***Panduit Corp. v. HellermannTyton* Corp., 451 F.3d 819 (Fed. Cir. 2006)** in support of its proposition that "covered by" means the same as "infringes;" i.e., that in order to prove Defendant has impermissibly withheld property "covered

by the ['938 Patent]," Plaintiffs must show that such property *infringes* on the Patent. (Doc. 51, pp. 4-5.) Defendant then embarks on a lengthy factual analysis in an attempt to demonstrate that the Tylar Sleeve does not, in fact, "infringe" the '938 Patent according to established patent law. (Doc. 51, pp. 5-18.)

The Court notes that Article X of the Agreement as it originally reads states, in pertinent part, that Defendant is responsible for "products covered by the LICENSED PATENT." (Exh. A, p. 15, ¶ 10.1.)[3] The term "LICENSED PATENT" is in turn defined by the Agreement as "only U.S. Patent Number 5,581,938, titled, DECORATIVE SLEEVE FOR COVERING A FLOWER POT, issued December 10, 1996, and any continuations, divisions, and/or continuations in part and/or any parent applications." (Exh. A, p. 4, ¶ 1.13.) From this it is immediately clear that ***Panduit*** is distinguishable. In that case, the Federal Circuit needed to decide whether a settlement agreement was breached wherein the defendant promised not to "make or sell . . . products . . . covered by any claim of the Panduit Patent." **451 F.3d at 823**. This straightforward language, exclusively concerning products "covered by [the] claim[s]" of a certain patent, is critically different from the language used in this contract. The latter verbiage appears on its face to encompass far more than the "claims" of the '938 Patent, extending to "any continuations, divisions,

---

[3] The Court notes that Defendant's quotation of this passage as merely referring to the "['938 Patent']" advantageously disguises the fact that "LICENSED PATENT" is incorporated therein as a defined term—a term which appears to mean something more than simply the "['938 Patent]." However, the Court further notes that Defendant is, in fact, quoting directly from the Complaint, wherein the alteration was curiously made by Plaintiffs.

.
.

and/or continuations in part and/or any parent applications." Because of this important difference, the Federal Circuit's interpretation of the contract in ***Panduit*** is inapposite. Because Defendant's motion for summary judgment relies on an interpretation of the contract that requires an infringement of the '938 Patent and does not address any continuations, divisions, and/or continuations in part and/or any parent applications of the '938 Patent, it is clear that the Court is unable to ascertain at this point whether Defendant has breached Article X as to the Tylar Sleeve.

In addition, even if the Court were to believe that the language contained in Article X was somehow ambiguous and required a consideration of the intent of the parties, genuine material disputes remain. Plaintiffs' representative in executing the Agreement, testified under oath that he understood the intent of the parties to be that "the defined term LICENSED PATENT includes *more than* solely the '938 Patent." (Exh. F, ¶ 4) (emphasis added). This belief is profoundly different from the position espoused by Defendant. (*See* Doc. 51, pp 3-5.) This genuine issue of material fact is sufficient to defeat Defendant's motion for summary judgment regarding claims concerning the Tylar Sleeve.

>    **2.   Summary Judgment Is Granted as to Plaintiffs' Romance Heart Sleeve Claims**

Plaintiffs do not dispute that Article 10.1 of the Agreement limits Defendant's responsibilities to product developments conceived "prior to [the] termination" of the Agreement. Neither do Plaintiffs dispute that the Agreement was

terminated in 2001. Therefore, in order for Plaintiffs to state a claim as to the "Romance Heart Sleeve," they must prove it was conceived between May 15, 1998 (the effective date of the Agreement) and May 15, 2001 (the date the Agreement was terminated). (*See* Doc. 2, ¶¶ 4, 14.) The only shred of evidence Plaintiffs have offered to the Court in support of this burden is labeled "Exhibit E." Exhibit E is a voluminous spreadsheet comprised of indecipherable product codes, Dutch language product descriptions, and aggregate sales figures apparently covering a six year period. Plaintiffs have offered the Court no assistance whatsoever in helping to determine how these records show that the Romance Heart Sleeve was conceived between 1998 and 2001. The Court interprets Plaintiffs' dearth of explanation on this point as some evidence that Exhibit E does not actually bear out Plaintiffs' claims. ***See U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) (holding that "Judges are not like pigs, hunting for truffles buried in" the record)**.

Defendant, on the other hand, has provided a supporting affidavit wherein Mr. Steven Schuitema convincingly explains that the Romance Heart Sleeve was not conceived until 2003. (Doc. 61, Exh. 1, ¶ 3.) Further, Mr. Schuitema credibly points out that prior testimony regarding a "Romance Sleeve" is in reference to an entirely different product than the one Plaintiffs complain of; specifically, the former is for cut flowers, and the latter is for potted plants. (*Id.*)

"In order to overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. However, the existence of a mere scintilla of evidence is not sufficient

to fulfill this requirement; the non-moving party must show that there is evidence upon which a jury reasonably could find for the plaintiff." **Belcher v. Norton, --- F.3d ----, 2007 WL 2318166, *3 (7th Cir. 2007) (citations omitted).** Plaintiffs have provided the Court with no "specific facts" whatsoever demonstrating that the Romance Heart Sleeve falls within the terms of the Agreement. Being uncontroverted by anything other than Plaintiffs' conclusory allegations, the Court accepts Defendant's explanation as true. Therefore, Defendant's Motion is granted as to the "Romance Heart." Plaintiffs' claims as to the Romance Heart are dismissed without prejudice. If Plaintiffs discover evidence that truly supports their allegation that the Romance Heart Sleeve was conceived of prior to the termination of the contract, then Plaintiffs may seek leave to amend their complaint.

    **C.    Preclusion**

Defendant next contends that a Memorandum and Order issued in an earlier lawsuit between the parties, ***Prima Tek II, L.L.C. v. Klerk's Plastic Industrie, B.V.*, Case No. 00-583-GPM**, bars Plaintiffs' claims because the prior case concerned the same cause of action or, alternatively, because Plaintiffs are collaterally estopped from relitigating certain issues decided therein. The Court finds that no claims nor any issues advanced by Plaintiffs in the instant matter are precluded by that case.

    **1.    Applicable Law**

According to Defendant, "since the prior case that precludes this

litigation was brought in federal court, federal rules of res judicata apply." (Doc. 51, p. 19.) Plaintiffs take the opposing position that Illinois law controls this question. (Doc. 60, p. 14.) For the reasons that follow, the Court finds that Plaintiffs' position is correct.

### i.  Controlling Precedent

In ***Semtek International Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 508 (2001)**, the Supreme Court declared that, while the preclusive effect of a federal court's judgment depends on federal common law rather than state law, federal common law nonetheless dictates that the state law of preclusion should apply in diversity cases. However, an exception to this default rule may be appropriate where a state's law of preclusion would conflict with federal interests. ***Id.* at 509.** For example, if a state would fail to give preclusive effect to dismissals for willful violation of discovery orders, "federal courts' interest in the integrity of their own processes might justify [supplanting the state's res judicata formula with federal law]." ***Id.***

In the present case, ***Semtek*** mandates that Illinois law should determine the preclusive effect of the March 2005 Order unless Illinois law would lead to a result in conflict with federal interests.  The Court finds no such conflict here.

### 2.  Res Judicata

Illinois law requires a three-part showing for a res judicata defense to

succeed: 1) a final judgement, 2) identity of causes of action, and 3) identity of parties. ***River Park v. City of Highland Park,*** **703 N.E.2d 883, 889 (Ill., 1998).** Each element "must" be shown, ***Id.***, and the burden of proof belongs to the moving party. ***Torcasso v. Standard Outdoor Sales, Inc.,*** **626 N.E.2d 225, 228 (Ill. 1993).**

The Court begins by considering the second prong, identity of causes of action, because it is dispositive in this case. In their Brief in Response (Doc. 60, p. 17), Plaintiffs claim that Illinois applies alternative tests to determine whether two causes of action are the same: a "same evidence" and a "transactional" test. Although Plaintiffs cite ***River Park*** for the proposition that Illinois entertains the two different standards, in fact, ***River Park*** expressly abolished the same evidence test. **703 N.E.2d at 893.**

Interpreting the ***River Park*** standard, the court in ***Cload ex rel. Cload v. West*** helpfully explained that the transactional test requires:

> examin[ing] the facts that give rise to the plaintiff's right to relief and assess[ing] whether they are linked in a manner such that they are part of a single transaction. The factors relevant to ascertaining whether they are so linked include their relation in time, space, origin, and motivation, whether they form a convenient trial unit, and whether their treatment as a single unit conforms to the parties' expectations and business usage or understanding.

**767 N.E.2d 486, 491 (Ill. App. 2002).**

Applying these considerations to the present facts, it is difficult to see how the causes of action here and in the earlier case could be regarded as one and

the same. The final judgment Defendant bases its res judicata claim on concerned whether Defendant had breached a settlement agreement given effect by a 2001 court order, in which Defendant made certain promises with regards to licenses executed in the 1980's. (Case No. 00-583-GPM, Doc. 132, p. 3). Generally, the settlement agreement governed manufacturing and sales activity with regards to "pot covers." (*Id.* at p. 2). In contrast, Plaintiffs' present cause of action concerns whether Defendant failed to transfer certain intellectual property to Defendant as required by an agreement executed in 1998 concerning "plant sleeves." Specifically, Plaintiffs complain they have rights to a "Tylar" and a "Romance Heart" sleeve design which Defendant has failed to surrender. While Defendant points out that Chief Judge Murphy discussed Defendant's usage of Tylar sleeves in his 2005 Order (Doc. 51 pp. 2-3), Chief Judge Murphy in fact clearly stated that Tylar "plant sleeves" had nothing to do with the "pot covers" governed by the settlement. (Case No. 00-583-GPM, Doc. 132, p. 42). He found that the technologies were distinct, and that "an argument . . . . that certain statements in [the settlement agreement] could relate to sleeve technology . . . strains credulity." *Id.* Of course, Plaintiffs and Defendant are both in the business of manufacturing decorative plant coverings and they have done a great deal of business together over many years. It is natural that the various contracts and operating agreements between them would have familiar characteristics and would cover familiar technologies. However, in this case, it is manifestly clear that litigation in 2005 regarding sales activity covered by a settlement agreement enforced in 2001 (which in turn covered licenses from the 1980's) is not part and parcel of a "single

transaction" encompassing a distinct contract from 1998 governing the ownership of intellectual property (concerning entirely different products). On this basis alone, res judicata does not bar Plaintiffs' claims.

### 3. Collateral Estoppel

For collateral estoppel to apply, there must be an issue raised by this case which is identical to an issue actually and necessarily decided in a prior, final judgment to which Plaintiffs were parties.[4] ***Talarico v. Dunlap,* 685 N.E.2d 325, 328 (Ill., 1997).** Furthermore, the effect of estoppel must not be "unfair." *Id.* Because the court finds that no issue essential to Plaintiffs' claims was actually and necessarily decided in the prior case, Defendant's collateral estoppel argument also fails.

As noted above, the 2005 Memorandum and Order concerned litigation over a settlement agreement which quieted a lawsuit over licenses executed in the 1980's. Chief Judge Murphy found that the relevant provision of the licenses at issue in that case, "Exhibit X," concerned only "pot covers;" "plant sleeves" are completely different. (S*ee* Case No. 00-583-GPM, Doc. 132, p. 2, ¶¶ 23-29.) Apparently PTII (Plaintiff here) attempted to allege in that case that Defendant's Tylar Sleeves were covered by Exhibit X to the old licenses. However, the court flatly rejected this claim:

> PTII seeks damages for what are referred to as "Tylar plant sleeves." As an initial matter, the Court finds that there is a substantial difference that is recognized within the industry between plant sleeves and plant (or pot) covers. . . . Only the most generous reading of Exhibit X results

---

[4] Or else Plaintiffs were in privity with such parties. *Id.*

> in a conclusion that there is any reference to sleeve technology. All the references in Exhibit X refer to molds and the molding process. Although an argument can be constructed that certain statements in Exhibit X could relate to sleeve technology, such an argument strains credulity.

(Case No. 00-583-GPM, Doc. 132, p. 42.)

In order to address PTII's allegations regarding the Tylar Sleeve, Chief Judge Murphy made certain findings regarding that product and "sleeves" in general. (*See* Case No. 00-583-GPM, Doc. 132, ¶¶ 20-26.) However, as the above quoted passage makes clear, the task before the court was to determine whether an agreement concerning *pot covers* had been breached. The only findings regarding Tylar Sleeves which were *necessarily* decided were that the sleeves were not covered by the agreement at issue because they were technologically distinct. Any finding which went beyond this (e.g., that Defendant did not use any of Plaintiffs' technology to make sleeves, *see* Case No. 00-583-GPM, Doc. 132, ¶ 21) was not "a critical and necessary part of the final judgment" and therefore has no effect. **People v. Daniels, 718 N.E.2d 149, 162 (Ill. 1999).**

Defendant has not alerted the Court to a judgment in the prior case on any issue which was "critical and necessary" to that decision and also identical to a dispositive issue in this case. Because this is fatal to Defendant's collateral estoppel claim, the Court needn't consider the identity of the parties nor whether estoppel would be unfair.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES IN PART** Defendant's motion for summary judgment as to the Tylar Sleeve and **GRANTS IN PART** the motion as to the Romance Heart Sleeve. (Doc. 43.)

**IT IS SO ORDERED.**

Signed this 27th day of September, 2007.

/s/      DavidRHerndon
**United States District Judge**